UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

BRANDON THOMPSON,

    Plaintiff,
v.
                                          CASE NO.:

FACEBOOK, INC.,

    Defendant.
_____/

## COMPLAINT

1.     Unwanted "Robocalls" are the #1 consumer complaint in America today.

2.     The people complaining about harassing robocalls is increasing at an alarming rate. In 2015, 2,125,968 complained to the Federal Trade Commission (FTC) and Federal Communications Commission (FCC), in 2016 this number was 3,401,614 2016 and in 2017 it was 4,501,967.[1] Companies also use robodialers to send hundreds of millions of harassing and unwanted text messages, which are considered to be calls under the Telephone Consumer Protection Act ("TCPA").

3.     Facebook, Inc., sent hundreds of unwanted texts to the Plaintiff.

4.     Facebook, Inc., has a corporate policy to robotext people thousands of times.

5.     "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone

---

[1] It is important to recognize these merely reflect the number of individuals that complained to these agencies; the number of people that have been victimized by illegal robocalling abuse could be close to 100,000,000 in the last 3 years

subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank*, F.S.B., 746 F. 3d 1242, 1256 (11th Cir. 2014). Despite the penalties put in place over 26 years ago, robocall abuse continues to skyrocket.

6. Plaintiff, Brandon Thompson, alleges Defendant, Facebook, Inc., texted him more than 100 times in stark violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA").

7. Robocalls are very inexpensive to make. As was noted in a Senate hearing on the subject: "With such a cheap and scalable business model, bad actors can blast literally tens of millions of illegal robocalls over the course of a single day at less than 1 cent per minute." *Stopping Fraudulent Robocall Scams: Can More Be Done?: Hearing Before the Subcomm. on Consumer Prot., Prod. Safety, and Ins. of the S. Comm. on Commerce, Sci., and Transp.*, 113 Cong. 113-117 (2013) (statement of Lois Greisman, Assoc. Director, Division of Marketing Practices, Bureau of Consumer Protection, Federal Trade Commission).

8. The TCPA was enacted to prevent companies like Facebook, Inc., from invading American citizens' privacy and prevent illegal robotexts.

9. Congress enacted the TCPA to prevent real harm. Congress found that "automated or pre-recorded calls are a nuisance and an invasion of privacy, regardless of the type of call" and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243, §§ 2(10-13) (Dec. 20, 1991), codified at 47 U.S.C. § 227; see also *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012) ("The Act bans certain practices invasive of privacy").

10. According to findings by the FCC—the agency Congress vested with authority to issue regulations implementing the TCPA—such calls are prohibited because, as Congress found,

automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

## JURISDICTION AND VENUE

11. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. §1331.

12. Violations described in the Complaint occurred while Plaintiff was in Cooper City, Florida.

## FACTUAL ALLEGATIONS

13. Plaintiff is a natural person and citizen of the State of Florida, residing in Cooper City, Florida.

14. Plaintiff is the "called party." *See Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014); *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

15. Defendant is a Delaware Corporation with its principal place of business in Menlo Park, California, and conducts business in the State of Florida.

16. Plaintiff is the regular user and carrier of the cellular telephone number at issue, (954) 913-8965.

17. Plaintiff was the "called party" during each phone call subject to this lawsuit.

18. Defendant intentionally harassed and abused Plaintiff on numerous occasions by texting several times during one day, and on back to back days, with such frequency as can reasonably be expected to harass.

3

19. Defendant did not have the "express consent" of the Defendant to call or text his cell phone.

20. "Express consent" is narrowly construed by the Courts.

21. It is the Defendant's burden to prove they had "express consent" per the TCPA to call or text the Plaintiff on his cell phone using an "automatic telephone dialing system" (ATDS).

22. It is the Defendant's burden to prove they had "express consent" per the TCPA to call or text the Plaintiff on his cell phone using an ATDS for each account they were calling on.

23. Defendant was put on notice Plaintiff did not want the Defendant contacting him.

24. Defendant was told to stop texting the Plaintiff.

25. Defendant did not have the express consent of the Plaintiff to call or text him.

26. Plaintiff expressly revoked any express consent Defendant may have mistakenly believed it had for placement of telephone calls or texts to Plaintiff's aforementioned cellular telephone number by the use of an ATDS.

27. Defendant made at least one text to (954) 913-8965.

28. Defendant made at least one text to (954) 913-8965 using an ATDS.

29. Defendant made at least ten (10) texts to (954) 913-8965.

30. Defendant made at least ten (10) texts to (954) 913-8965 using an ATDS.

31. Defendant made at least thirty (30) texts to (954) 913-8965.

32. Defendant made at least thirty (30) texts to (954) 913-8965 using an ATDS.

33. Defendant made at least fifty (50) texts to (954) 913-8965.

34. Defendant made at least fifty (50) texts to (954) 913-8965 using an ATDS.

35. Defendant made at least one hundred (100) texts to (954) 913-8965.

36. Defendant made at least one hundred (100) texts to (954) 913-8965 using an ATDS.

37. Each text the Defendant made to (954) 913-8965 in the last four years was made using an ATDS.

38. Each text the Defendant made to the Plaintiff's cell phone was done so without the "express permission" of the Plaintiff.

39. Defendant has texted other people's cell phones without their express consent.

40. Each text the Defendant made to the Plaintiff was made using an ATDS, which has the capacity to store or produce telephone numbers to be called, without human intervention, using a random or sequential number generator; and to dial such numbers as specified by 47 U.S.C § 227(a)(1).

41. Plaintiff repeatedly requested the Defendant to stop texting his cell phone, however, the Defendant continued to text him hundreds of times.

42. Defendant has admitted to texting cell phones using an ATDS after that person asked for the texts to stop.

43. Plaintiff's notice to the Defendant that he did not want more texts was ignored.

44. Defendant has made approximately one hundred (100) texts to Plaintiff's aforementioned cellular telephone number since in or about June of 2018 which will be established exactly once Defendant turns over their dialer records.

45. Despite actual knowledge of their wrongdoing, the Defendant continued the campaign of abusive robotexts.

46. Defendant has been sued in federal court where the allegations include: texting an individual using an ATDS after the individual asked for the calls to stop.

47. By effectuating these unlawful phone calls, Defendants have caused Plaintiff the very harm that Congress sought to prevent—namely, a "nuisance and invasion of privacy."

48. Defendant's aggravating and annoying texts trespassed upon and interfered with Plaintiff's rights and interests in his cellular telephone and cellular telephone line, by intruding upon Plaintiff's seclusion.

49. Defendant's texts harmed Plaintiff by wasting his time.

50. Moreover, "wireless customers [like Plaintiff] are charged for incoming calls whether they pay in advance or after the minutes are used." In re: *Rules Implementing the TCPA of 1991*, 23 FCC Rcd 559, 562 (2007). Defendant's texts harmed Plaintiff by depleting the battery life on his cellular telephone, and by using texts allocated to Plaintiff by his cellular telephone service provider.

51. Defendant's corporate policy and procedures are structured as to continue to text individuals like the Plaintiff, despite these individuals revoking any consent the Defendant may have mistakenly believed it had.

52. Defendant's corporate policy and procedures provided no means for the Plaintiff to have his aforementioned cellular number removed from the call list.

53. Plaintiff expressly revoked any consent Defendant may have mistakenly believed it had for placement of texts to Plaintiff's aforementioned cellular telephone by the use of an ATDS immediately upon Defendant's placement of the texts. Making money while breaking the law is considered an incentive to continue violating the TCPA and other state and federal statutes.

54. Defendant never had the Plaintiff's expresse consent for placement of texts to his aforementioned cellular telephone by the use of an ATDS or a pre-recorded or artificial voice.

55. None of Defendant's texts placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

56. Defendant violated the TCPA with respect to the Plaintiff.

57. Defendant willfully or knowingly violated the TCPA with respect to the Plaintiff.

## COUNT I
### (Violation of the TCPA)

58. Plaintiff incorporates Paragraphs one (1) through fifty-seven (57).

59. Defendant willfully violated the TCPA with respect to the Plaintiff each time they texted the Plaintiff after he revoked his consent to be called by them using an ATDS or pre-recorded voice.

60. Defendant knowingly violated the TCPA with respect to the Plaintiff, especially for each of the auto-dialed texts made to Plaintiff's cellular telephone after Plaintiff revoked his consent to be called by them using an ATDS or pre-recorded voice.

61. Defendant, Facebook, Inc., repeatedly placed non-emergency telephone calls to the wireless telephone number of Plaintiff using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

62. As a result of Defendant's illegal conduct, Plaintiff suffered actual damages and, under § 227(b)(3)(B), is entitled to, inter alia, a minimum of $500.00 in damages for each such violation of the TCPA.

63. Plaintiff is also entitled to, and does, seek injunctive relief prohibiting Defendant, Facebook, Inc., from violating the TCPA in the future.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages and any other such relief the court may deem just and proper.

Respectfully submitted,

_s/ Geoffrey E. Parmer_
Geoffrey E. Parmer, Esquire
Florida Bar No. 989258
William "Billy" Peerce Howard, Esquire
Florida Bar No. 0103330
The Consumer Protection Firm
4030 Henderson Boulevard
Tampa, FL 33629
Telephone: (813) 500-1500 x206
Facsimile: (813) 435-2369
Geoff@TheConsumerProtectionFirm.com
Billy@TheConsumerProtectionFirm.com
*Attorneys for Plaintiff*